## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENEXA BRASSRING, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-660-SLR |
| | ) |
| AKKEN, INC., | ) |
| DAXTRA TECHNOLOGIES INC., | ) |
| DAXTRA TECHNOLOGIES LIMITED, | ) |
| GETHIRED, INC, | ) |
| OTYS E-RECRUITING SYSTEMS USA LLC, | ) |
| OTYS INTERNATIONAL B.V., and | ) |
| READYFORCE, INC. | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM ORDER

At Wilmington this  ꙭᵗʰday of June, 2013, having reviewed the motion to dismiss

filed by defendants and the papers submitted therewith;

IT IS ORDERED that said motion to dismiss (D.I. 42) is denied without prejudice

to renew, as follows:

1. **Background.** Plaintiff Kenexa Brassring, Inc. ("Kenexa") asserts that

defendants Akken, Inc., Daxtra Technologies Inc. ("Daxtra US"), Daxtra Technologies

Limited ("Daxtra UK"), Gethired, Inc., Otys E-Recruiting Systems USA LLC, Otys

International B.V., and Readyforce, Inc. (collectively, "defendants") infringe U.S. Patent

Nos. 5,999,939, 6,996,561, and 7,958,059 (collectively, the "patents-in-suit") for

facilitating the transfer of information into a "structured database." (D.I. 1 at ¶¶ 24, 71, 118) The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. Kenexa is a Delaware corporation with its principal place of business in Wayne, Pennsylvania. (D.I. 1 at ¶ 1) It is the owner of the patents-in-suit and, on May 25, 2012, brought the present infringement suit against Daxtra UK and the other defendants. (*Id.* at ¶¶ 9-11) Daxtra UK is a company registered in Scotland with places of business in Edinburgh and London within the United Kingdom. (*Id.* at ¶ 4) Daxtra UK is the parent company of Daxtra US, which was formed in 2006 for the purpose of marketing and selling software and providing support in the United States. (D.I. 44 at ¶ 3) Daxtra US is a Delaware corporation with its headquarters in Richmond, Virginia. (*Id.*) Daxtra UK claims that there are no corporate operations or employees of either entity located in Delaware. (*Id.*)

3. In its complaint, Kenexa names Daxtra UK's software "Candidate Capture" as an infringing product. (D.I. 1 at ¶¶ 24, 71, 118) The product was created by a third party in 2002-2003, assigned to Daxtra UK in 2005 and, following the formation of Daxtra US, Daxtra UK exclusively licensed to Daxtra US the right to sell and license Candidate Capture to customers in the United States. (D.I. 44 at ¶ 4) Daxtra UK asserts that all of the licensees and customers of Candidate Capture receive a server computer that has the software pre-loaded, which is only available through Daxtra US. (*Id.* at ¶ 6) Additionally, Daxtra UK claims that all U.S. licensees pay royalties only to Daxtra US and not to Daxtra UK. (*Id.* at ¶ 8)

2

4. Beginning in 2004, Daxtra UK also began selling a software product called CVX, licensing it to European and other non-U.S. companies. (*Id.* at ¶ 2) CVX was directly licensed by Daxtra UK to a single U.S. company before the formation of Daxtra US. (*Id.* at ¶ 4) Once Daxtra US was formed, that license for CVX was transferred to it. (*Id.*)

5. **Standard of review.** Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

6. To establish personal jurisdiction, a plaintiff must produce facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional. *See id. at 66*; *Reach & Assocs. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003). With respect to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long-arm statute. *See*

*Reach & Assocs.*, 269 F. Supp. 2d at 502. The constitutional basis requires the court to

determine whether the exercise of jurisdiction comports with the defendant's right to due

process. *See id.; see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

7. Pursuant to the relevant portions of Delaware's long-arm statute, 10 Del. C.

§ 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the

defendant or its agent:

(1) Transacts any business or performs any character of work or service in the
State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or
omission outside the State if the person regularly does or solicits business,
engages in any other persistent course of conduct in the State or derives
substantial revenue from services, or things used or consumed in the State;

10 Del. C. § 3104(c)(1)-(4). With the exception of subsection (c)(4), the long-arm

statute requires a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F.

Supp. 2d 351, 354, 355 (D. Del. 2008). Subsection (c)(4) confers general jurisdiction,

which requires a greater number of contacts but allows the exercise of personal

jurisdiction even when the claim is unrelated to the forum contacts. *See Applied*

*Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

8. If a defendant is found to be within the reach of the long-arm statute, the court

then must analyze whether the exercise of personal jurisdiction comports with due

process, to wit, whether the plaintiff has demonstrated that the defendant "purposefully

avail[ed] itself of the privilege of conducting activities within the forum State," so that it

should "reasonably anticipate being haled into court there." *World-Wide Volkswagen*

4

*Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

9. **Discussion.** In order to establish personal jurisdiction in this case, Kenexa must show by a preponderance of the evidence that Daxtra UK's actions fall under the Delaware long-arm statute. *See Time Share Vacation Club*, 735 F.2d at 66. Plaintiff does not argue that the court has general jurisdiction over Daxtra UK. (D.I. 62 at 6) Therefore, the relevant inquiries are whether Daxtra UK transacted business, contracted to transact business, or committed a tortious injury through patent infringement in Delaware, such that there is specific jurisdiction. 10 Del. C. § 3104(c)(1)-(3).

10. Kenexa asserts personal jurisdiction through direct contacts between Daxtra UK and the United States, including Delaware. Kenexa first points to Daxtra UK's direct sale of a potentially infringing product in the United States. (D.I. 62 at 7) Kenexa argues that the CVX parser software that Daxtra UK licensed to a U.S. company prior to the formation of Daxtra US "may practice one or more claims of the asserted patents." (*Id.* at 8) At this stage of litigation, it is unclear whether Kenexa will accuse the CVX product of infringing the patents-in-suit. (*See* D.I. 62 at 8) As Kenexa has not shown that its cause of action arises from the sale or license of CVX to a U.S. customer, it has not shown specific jurisdiction on that ground.

11. Kenexa further claims that Daxtra UK has used its own "Candidate Capture" hiring technology to "solicit job applicants in the United States for employment positions with Daxtra [UK]" and essentially "invited applicants in the U.S. to avail itself of that

5

technology to seek employment with Daxtra [UK and US]." (*Id.* at 9) Pursuant to *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446 (3d Cir. 2003), web sites that are interactive can confer personal jurisdiction even if there is a single contact. *Id.* at 452 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). To support its assertions, Kenexa attaches a declaration that includes six exhibits of web pages. (D.I. 63, exs. A-F) These web pages from Daxtra UK's web site and LinkedIn profiles of Daxtra UK employees show Daxtra UK soliciting job applicants from the United States and include a hyperlink that allegedly uses Candidate Capture to parse potential job applicants' data. (*Id.,* ex. D) However, as Daxtra UK contends, Kenexa has not indicated any particular instance in which a U.S. applicant interacted with the web site and used the link. (*Id.*; D.I. 67 at ¶ 4) Kenexa's supporting evidence, therefore, does not meet the preponderance of the evidence standard to establish sufficient minimum contacts for personal jurisdiction at this time.

12. The only other way for Kenexa to establish personal jurisdiction over Daxtra UK is through contacts maintained by its subsidiary, Daxtra US. In this regard, there are two theories under which a defendant company may be subject to personal jurisdiction in Delaware by virtue of the court's personal jurisdiction over the defendant company's affiliate: the "alter ego theory" and the "agency theory." *C.R. Bard, Inc. v. Guidant Corp.,* 997 F. Supp. 556, 559 (D. Del. 1998). Kenexa alleges that the court has personal jurisdiction over Daxtra UK under the agency theory. (D.I. 67 at 4)

13. "Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's

6

direction." *C.R. Bard*, 997 F. Supp. at 560. This theory does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts. *Id.*; *see also Applied Biosystems*, 772 F. Supp. at 1464 (stating that under the agency theory, "only the precise conduct shown to be instigated by the parent is attributed to the parent"). The four factors relevant to this determination are: (1) "the extent of overlap of officers and directors;" (2) "methods of financing;" (3) "the division of responsibility for day-to-day management;" and (4) "the process by which each corporation obtains its business." *Telcordia Techs., Inc. v. Alcatel SA*, Civ. No. 04-874, 2005 WL 1268061, at *2 (D. Del. May 27, 2005). Additionally, "no one factor is either necessary or determinative; rather it is the specific combination of elements which is significant." *Id.*

14. Under this framework, the first factor is undisputed by both parties, as Daxtra UK has admitted that its officers and directors completely overlap. (D.I. 44 at ¶ 7) Daxtra UK's Chairman and Chief Technology Officer ("CTO") Steven Finch states that the directors and officers consist solely of "myself and Andrei Mikheev." (*Id.*) This factor alone is not dispositive. *See Telcordia*, 2005 WL 1268061, at *2.

15. Regarding the second factor, methods of financing, Daxtra UK further asserts that Daxtra US "is a self-sustaining entity" and that there is "no common overlap with respect to financing the operations of each of the entities," although a portion of the license fees that Daxtra US pays to Daxtra UK includes the cost of bookkeeping and invoices. (D.I. 44 at ¶¶ 9, 11) Kenexa has not alleged with any reasonable particularity

an overlap in methods of financing, such as shared intercorporate accounts or financial statements. *See Applied Biosystems*, 772 F. Supp. at 1461; *see also Telcordia*, 2005 WL 1268061 at \*4.

16. With respect to the third factor, Daxtra UK asserts that day-to-day management responsibilities for Daxtra US have been carried out by employees of Daxtra US and that "all sales and service decisions and operations are made and conducted independently" as between it and Daxtra UK. (D.I. 44 at ¶¶ 7, 10; D.I. 43 at 7) Daxtra UK concedes that beginning in the fall of 2012, Daxtra UK's CTO, Finch, has helped to make sales calls and grow the business in the United States by becoming a temporary employee of Daxtra US. (*Id.* at ¶ 8) His assignment with Daxtra US will last for several months, during which he will be paid by Daxtra US and will enter into license agreements with U.S. customers through Daxtra US. (*Id.*) Kenexa asserts that Finch's move to Daxtra US is indicative of his playing a larger role in the day-to-day management than Daxtra UK claims, especially since he began working there around the same time Mr. Hagberg, the new Client Services Director, was hired to run Daxtra US. (D.I. 62 at 11) Kenexa doubts that "it is the relatively inexperienced Mr. Hagberg, and not the Founder, Mr. Finch, who is truly responsible for making the day-to-day business decisions for the company." (*Id.*)

17. As to the final factor, Daxtra UK concedes that, "**while there may be some exceptions**, it is believed that the vast majority of customers [of Daxtra US] . . . were

generated by [Daxtra US's] contacts." (D.I. 44 at ¶ 10) (emphasis added) This qualified assertion, in conjunction with Kenexa's allegations, leaves open the possibility that Daxtra US obtains some business from Daxtra UK. Although Kenexa has not proffered affirmative evidence to support its assertion of personal jurisdiction, its contentions are based on reasonable inferences from the facts of record.

18. "Courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the parties] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "Jurisdictional discovery is particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.*, Civ. No. 08-1720, 2009 WL 1408523, at *9 (3d Cir. May 21, 2009). A court must determine whether certain discovery avenues, "if explored, might provide the 'something more' needed" to establish personal jurisdiction. *Toys*, 318 F.3d at 456 (citation omitted).

19. Given the record described above, the court concludes that plaintiff has presented factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between Daxtra UK and Delaware. Allowing limited discovery based upon Kenexa's allegations would not be allowing a "fishing expedition"

because these assertions, based in part on CTO Finch's declaration and numerous exhibits, are more than "bare allegations." *See Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008) (establishing that discovery based on "bare allegations" would constitute a fishing expedition).

20. For the aforementioned reasons, the court denies Daxtra UK's motion to dismiss without prejudice to renew. The court will allow jurisdictional discovery, which shall close on **September 30, 2013**. Daxtra UK may renew its motion to dismiss on or before **October 31, 2013**.

United States District Judge